UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SONALOITA WILSON, | Case No. 2:18-CV-1241 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Sonaloita Wilson's appeal of Magistrate Judge Nancy J. Koppe's order excluding Wilson's untimely disclosed life care plan. (ECF No. 91). Defendant United States responded in opposition (ECF No. 92).

Also before the court is Wilson's motion for leave to file a reply in support of her appeal. (ECF No. 95). The government responded in opposition. (ECF No. 96).

I. **BACKGROUND**

Sonaloita Wilson was rear ended by a United States Department of Treasury employee acting within the scope of her employment. (First Am. Compl., ECF No. 44 ¶¶ 22–24). Shortly after the collision, she was rear ended again by defendant Liceth Demha-Santiago who was driving defendant and immediate family member Juan Demha's car. (*Id.* ¶¶ 27–30). Wilson alleges various negligence claims and theories of liability against the United States, Demha-Santiago, and Demha and seeks to recover for her medical expenses, lost wages, and pain and suffering. (*Id.* ¶¶ 31–90). Most notably, she underwent a lumbar fusion surgery and multiple revision procedures. (ECF No. 92 at 3).

Wilson retained life care planner Dr. David J. Oliveri as an expert. (Initial Expert Report, ECF No. 88-4). Dr. Oliveri opined in his initial expert report that Wilson may need a

**James C. Mahan**
**U.S. District Judge**

"significant amount of supportive care services as well as potentially an in-home Personal Care Attendant" yet wanted to give her "some more time in her postoperative rehabilitation" before making any such recommendations. (*Id.* at 44; *see also id.* at 45 ("Regardless of the final outcome . . . it is medically expected that [Wilson] will require some type of lifelong supportive care.")). Dr. Oliveri calculated Wilson's future medical costs to be $303,763 plus loss of earnings capacity. (*Id.* at 59). This cost estimate did not include eight categories of "future treatment requirements that are yet to be determined" as part of a life care plan.[1] (*Id.* at 45). He affirmed this initial cost estimate in a second report. (First Supp. Report, ECF No. 88-4 at 60–95). Wilson served Dr. Oliveri's first two reports in her initial expert disclosures on July 8, 2020. (ECF No. 90 at 2). She supplemented her initial expert disclosures with a third report that again affirmed the initial cost estimate. (*Id.*).

The United States deposed Dr. Oliveri on November 17, 2020. (*Id.* at 3). He "testified that he had prepared a life care plan for [Wilson], but that did not have enough information at that time 'to make a determination about many of the categories' that would be expected in a life care plan." (*Id.* (quoting Oliveri Dep., ECF No. 84-3 at 8–9)). He also testified that, after reviewing additional records, he could now " 'finalize those categories [of undetermined future treatment requirements] that were still pending. ' " when he prepared his initial report. (*Id.*).

After the government's deposition of Dr. Oliveri, Wilson served a fourth expert report in her fourteenth supplemental disclosure. (Third Supp. Report, ECF No. 84-5). In this fourth report, Dr. Oliveri provided cost estimates for the previously undetermined parts of the life care plan. (*Id.* at 54–70). The report also included new costs "related to durable medical equipment; orthotics and prosthetics; [and] wheelchairs, mobility, and maintenance, which account[ ] for $22,172 of the total value of the life care plan." (ECF No. 91 at 8). As a result, Wilson's estimated future medical costs increased from $303,763 plus loss of

---

[1] Dr. Oliveri listed these eight yet to be determined future treatment requirements: specialty physician monitoring, palliative physical therapy, psychological supportive care, prescription medication, treatment for cervical spine pain and cephalgia, treatment for facial and dental injuries, advanced pain management intervention including injections and spinal neurostimulator, household services. (ECF No. 88-4 at 45).

**James C. Mahan**
**U.S. District Judge**

- 2 -

earnings capacity to a range of $1,504,780 to $2,238,876 plus loss of earnings capacity. (ECF No. 84-5 at 70).

The United States objected to Dr. Oliveri's fourth report and successfully moved to exclude his life care plan. (Order, ECF No. 90). Judge Koppe made three rulings in granting the motion. First, she disposed of Wilson's contention that the life care plan was a mere supplemental disclosure, finding that it did not correct inaccuracies but added new information. (*Id.* at 5–6). Second, she ruled that Wilson did not meaningfully analyze why disclosure of the life care plan 169 days after the initial expert disclosure deadline was substantially justified or harmless under Rule 37(c)(1). (*Id.* at 5). Third, she concluded that excluding the untimely life care plan was the proper sanction. (*Id.* at 7–8 (analyzing the factors in *Wendt v. Host Int'l*, 125 F.3d 806, 814 (9th Cir. 1997))). Wilson's late disclosure deprived the government of an opportunity to depose Dr. Oliveri and prepare a rebuttal report. (*Id.* at 7). The court's nine extensions of the discovery deadline militated towards exclusion as well. (*Id.*). Wilson now appeals Judge Koppe's order excluding her untimely disclosed life care plan. (ECF No. 91).

## II. LEGAL STANDARD

The court may "reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a). A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A legal conclusion is contrary to law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Desage*, 229 F. Supp. 3d 1209, 1213 (D. Nev. 2017) (citation omitted). Review under a clearly erroneous standard is "significantly deferential." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993). The district judge cannot simply substitute his judgment for that of the magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

James C. Mahan
U.S. District Judge

- 3 -

## III. DISCUSSION

As a preliminary matter, Wilson moves for leave to reply to the government's opposition, arguing that she must rebut the government's mischaracterization of Dr. Oliveri's deposition testimony. (ECF No. 95 at 1). Such replies are only allowed with leave of court. LR IB 3-2(a). Yet the reply does much more than what Wilson posits. Amid *some* discussion of Dr. Oliveri's deposition testimony, (*see, e.g.*, ECF No. 93 at 5, 8), the reply repeats, recasts, and supplements Wilson's arguments in her appeal. (*Id.* at 5–10). For this reason, Wilson's motion (ECF No. 95) is DENIED and the court will not consider the reply in adjudicating this appeal.

The court now turns to Wilson's appeal. (ECF No. 91). At first glance, Wilson's appeal has the gloss of the clearly erroneous standard of review. But upon second glance, Wilson does not point to any clear error or misapplication of law. Instead, she rectifies her failure to "apply the law meaningfully in her analysis," (ECF No. 90 at 5), before the magistrate judge.[2] (*Compare* Opp'n to Mot. to Exclude, ECF No. 88 at 10–11, *with* Appeal, ECF No. 91 at 15). Because an appeal of a magistrate judge's order is not a second chance

---

[2] As discussed, Judge Koppe ruled that Wilson failed to carry her burden of establishing substantial justification or harmlessness as she did not "apply the law meaningfully in her analysis." (ECF No. 90 at 5). Wilson now offers a much more developed analysis in her appeal. Take this discussion of harmlessness:

> As was discussed above, Dr. Oliveri's initial report that was filed seven months before the initial expert deadlines had same total of economic damages as his final supplemental report, $10,000,000. Dr. Oliveri's initial report had nearly all of the categories of damages that were listed in his final report as well, which were available and able to be considered by Defendant United States' expert Mark Remas. Since the total amount of damages, and the damages categories were available for Defendants United States' expert to review it cannot be said that Dr. Oliveri's final supplemental report, which contained nearly the same information was prejudicial to Defendants, and the Magistrate's Order to exclude Dr. Oliveri's supplemental report was clearly erroneous.

(ECF No. 91 at 15).

James C. Mahan
U.S. District Judge

- 4 -

to develop legal arguments made before the magistrate judge, the court can deny Wilson's appeal on this basis alone.

In any event, Wilson still does not convince the court that excluding her untimely life care plan was clear error. Wilson's core contention is that the *categories* of costs in the life care plan never changed. (ECF No. 91 at 12). Given her "constantly changing medical prognosis" and new medical records, it was substantially justified to calculate the costs in a fourth report. (*Id.* at 13). In short, "Dr. Oliveri required a stable prognosis" before estimating the costs of the life care plan. (*Id.*). The government and its expert were aware of these "moving parts" when Dr. Oliveri was deposed. (*Id.* at 12). And the fourth report is harmless because it did not change the $10 million *total* damages estimate. (*Id.* at 13). Wilson also repeats that exclusion was too drastic of a sanction. (*Id.* at 15–17). It excludes $1.5 to $2.2 million in damages without a merits determination. (*Id.* at 18). The appropriate sanction is to reopen discovery and allow opposing experts to opine on the reasonableness of the life care plan. (*Id.* at 19).

Initial expert disclosures must be "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "The test of a report under Rule 26(a)(2)(B) is whether [it] is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions . . . avoided, and costs are reduced." *Izzo v. Wal-Mart Stores, Inc.*, No. 2:15-cv-01142-JAD-NJK, 2016 WL 593532, at *2 (D. Nev. Feb. 11, 2016) (internal quotation marks and citation omitted). Supplementation of initial expert disclosures is allowed (1) upon court order, (2) to correct inaccurate or incomplete information, or (3) when answers to discovery requests are inaccurate or incomplete. *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). Supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009) (citing *Keener*, 181 F.R.D. at 640).

James C. Mahan
U.S. District Judge

The court is somewhat receptive to Wilson's contention that her medical prognosis was uncertain until long after the initial report. This suggests that Dr. Oliveri could not estimate the costs of the life care plan with any reasonable degree of medical probability until the fourth report. But it was not contrary to law to say that the costs were new information that Wilson could have disclosed earlier. As the government puts it: "At the time of [the] initial expert disclosures, Dr. Oliveri had already examined Plaintiff three times. He had over a year to evaluate Plaintiff's condition, to review her medical records, and to determine the potential categories and cost of a life care plan. Despite having sufficient time to do so, Dr. Oliveri provided no opinions regarding a life care plan in his initial expert report." (ECF No. 92 at 8).

Moreover, the court cannot say that the imposed sanction was contrary to law. Even though the late disclosure was not willful or in bad faith, these are not *required* findings for exclusion. Judge Koppe dutifully applied the required *Wendt* factors and the court will not displace her judgment. Her sanction was not contrary to law.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wilson's motion for leave to file a reply in support of her appeal (ECF No. 95) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wilson's appeal of Magistrate Judge Nancy J. Koppe's order excluding her untimely disclosed life care plan (ECF No. 91) be, and the same hereby is, DENIED.

DATED May 7, 2021.

_____
UNITED STATES DISTRICT JUDGE