UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SONALOLITA WILSON,<br><br>                          Plaintiff(s),<br><br>      v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                          Defendant(s). | Case No. 2:18-CV-1241 JCM (NJK)<br><br>ORDER |

Presently before the court are a series of motions in limine filed by both parties. (ECF Nos. 128; 134; 135; 136). The relevant parties responded to each of those motions. (ECF Nos. 143; 151; 148; 150)

**I.      Background**

The instant dispute concerns a pair of car crashes that occurred in sequence. On September 1, 2016, plaintiff Sonololita Wilson stopped her vehicle at an intersection, allegedly to allow pedestrians to cross the street. (ECF No. 124). Nakia McCloud, an employee of the Department of the Treasury, was driving behind her, did not stop, and rear-ended her vehicle. (*Id.*) Shortly thereafter, while she remained inside her now-disabled vehicle, she was rear-ended a second time by dismissed defendant Liceth Demha-Santiago. (*Id.*)

After several years of litigation, all defendants except the government have been dismissed, and plaintiff brings several negligence claims it. The parties have stipulated to a bench trial. (ECF No. 162). In preparation for that trial scheduled for April 10, 2023, both plaintiff and defendant have filed the instant motions in limine.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## II. Legal Standard

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions in limine are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions in limine may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling in limine that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

"Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted [or excluded] at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

The primary purpose of a motion in limine is to resolve evidentiary disputes without having to present potentially prejudicial evidence in front of a jury. *See Pinal Creek Group v. Newmont Mining Corp.*, No. CV–91–1764–PHX–DAE, 2006 WL 1766494, at *1 (D. Ariz. June

James C. Mahan
U.S. District Judge

- 2 -

26, 2006). Thus, "in the case of a bench trial, a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

The court will be in a better position to rule upon challenges to evidence during trial when there will be a fuller understanding of the issues and evidence in the case. Therefore, the more prudent course in a bench trial is to resolve evidentiary doubts in favor of admissibility. *See Shaw v. Citimortgage, Inc.*, 3:13-cv-0445-LRH-VPC, 2016 WL 1659973 at *2 (D. Nev. April 26, 2016).

**III.   Discussion**

A. Motion to Exclude Life Care Planner Expert on Future Damages

First, the government moves to exclude plaintiff from presenting evidence of her life care planner expert's future damages calculation. (ECF No. 128). This court previously denied an objection to Magistrate Judge Koppe's order (ECF No. 90) that concluded plaintiff's disclosure of this expert was untimely and excluded evidence of the life care plan and its damages. *See* (ECF No. 97).

To clarify, plaintiff has already been precluded from offering this evidence. (ECF Nos. 90; 97), Thus, the court DENIES this motion as moot. Plaintiff concedes in its opposition that it cannot offer the evidence excluded by the court's prior orders, and the court will hold her to that concession.

B. Motion to Exclude Apportionment Opinions

Next, plaintiff moves for an order excluding the government's expert witnesses from providing opinions that "apportion" percentages of plaintiff's total damages to one of the two accidents at issue. (ECF No. 134). In its response, the government concedes that it does not oppose such a request insofar as it prevents those witnesses from assigning a comparative level of damage to each accident, but it does oppose insofar as any order would prevent the witnesses from testifying as to cause at all. (ECF No. 151).

Essentially, this motion seeks to require the government's experts to testify consistently with their reports. Only one of the government's experts, Ms. Kimberly Balogh, has opined as to the relationship between the two accidents in this case, and the court will address that witness

below. The court has no reason to believe that the government will seek to use an expert's testimony to assign a comparative value of damages to each accident, and the government has represented that it has no intention of doing so. *See (id.* at 4–5).

Therefore, the court will GRANT this motion as far as it prevents from the government from eliciting an opinion apportioning some percentage of damages to one accident or the other—"37% of plaintiff's injuries resulted from the first crash, whereas 63% are attributable to the second," as a non-exhaustive example. However, this does not prevent the government from presenting any evidence regarding causation, and the government's experts, subject to the restrictions of the Federal Rules of Evidence, may still opine as to which of the two crashes might have been responsible for any injury, or, indeed, whether the crashes caused the injuries at all, as already detailed in their reports.

C. <u>Motion in Limine to Exclude Evidence Regarding Dr. Freeman</u>

Plaintiff's next motion seeks to exclude potential impeachment evidence related to her expert, Dr. Michael Freeman. (ECF No. 135). Specifically, she requests that this court prevent the government from asking about the "1990 litigation" and the "1986 chiropractic school suspension."

While vague, the 1990 litigation seems to refer to an unnamed lawsuit wherein Dr. Freeman was sued regarding his use of a non-FDA compliant diagnostic device. *See* (*id.*). That suit was later dismissed with prejudice. *See* (*id.*) The government identifies what it believes to be the case in question and states that it does not intend to introduce evidence regarding it. *See* (ECF No. 148). The court will thus GRANT the motion on this ground and prevent the government from introducing evidence regarding *State of Oregon v. Freeman*, Case No. 91C-10151.

The 1986 suspension, on the other hand, refers to an incident in which Dr. Freeman was suspended from chiropractic school for falsifying treatment records to satisfy a practicum requirement for graduation. *See* (ECF No. 135). Plaintiff minimizes this conduct and attempts to explain it away but presents no true argument for exclusion other than the temporal remoteness of the conduct.

James C. Mahan
U.S. District Judge

- 4 -

Federal Rule of Evidence 608 allows a party to present, on cross-examination, extrinsic evidence of specific instances of a witness's conduct to prove or undermine that witness's character for truthfulness. Fed. R. Evid. 608(b). The evidence discussed in this motion is a paradigmatic case of a Rule 608 impeachment. A specific instance of untruthful conduct is being used to call into question a witness's character for truthfulness. That the incident occurred long ago, had mitigating factors, and has seemingly been overshadowed by subsequent conduct are adequate responses to impeachment that go toward rehabilitation of the witness on redirect examination. *See* (ECF No. 135 at 4–5). Those explanations might undermine the effectiveness of any cross-examination regarding Dr. Freeman's testimony, but they do not require the court to exclude that potential cross examination altogether—particularly since this is now a bench trial.

The court will refuse to exclude questions about the 1986 suspension and DENIES the motion as to that request. The government may ask Dr. Freeman about that suspension as permitted by the Federal Rules of Evidence, and this court will give that testimony the weight it deserves in light of any mitigating testimony plaintiff elicits.

D. Motion in Limine Regarding Ms. Balogh

Plaintiff's final motion seeks to exclude Ms. Kimberly Balogh's expert testimony altogether. (ECF No. 136). Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In determining whether an expert's testimony is reliable under Rule 702, courts consider "(a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community. *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (citing *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). District judges retain

James C. Mahan
U.S. District Judge

- 5 -

"broad latitude to determine" whether these factors reasonably measure the reliability of an expert witness's testimony. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

"*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co* 526 U.S. at 141. This "gatekeeping obligation" requires "that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Expert testimony must be relevant and reliable, and it must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

Exclusion of expert testimony is proper only when such testimony is irrelevant or unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

The Ninth Circuit does not require district courts to conduct *Daubert* hearings when evaluating the reliability of an expert. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019). Rather, courts retain discretion in the procedure they use to determine whether expert testimony is admissible under Rule 702. *See Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009).

Here, even assuming all of the other factors are met, Ms. Balogh's methodology is unreliable. In fact, the court is unsure of what her methodology actually was in developing her report. Nowhere in her report is there a specific reference to any data. *See* (ECF No. 150-3). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

James C. Mahan
U.S. District Judge

There is nothing in the report suggesting that Ms. Balogh undertook any sort of accident reconstruction, or, indeed, engaged in any empirical analysis of the crash at all. Her analysis does not refer to the facts of this case and simply regurgitates what appear to be basic principles of physics. (ECF No. 150-3 at 7–8). She provides no data to suggest whether the use of a seatbelt would or would not have affected this plaintiff, and merely concludes that the presence of a seat belt in the first accident means there was no possibility of injury and the injuries must have been the result of the second accident—when plaintiff was not wearing a seat belt. *See* (*id.*).

That conclusion may be correct, but it is based on nothing but a flimsy reference to Newton's laws of motion and general assumptions about the efficacy of seatbelts. While "[e]ither 'hands-on testing' or 'review of experimental, statistical, or other scientific data generated by others in the field' may suffice as a reasonable methodology upon which to base an opinion," the court cannot determine from the report that either of those two things occurred here. *See Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996) (excluding a bioengineer's testimony when that engineer offered only a "bottom line conclusion" that was supported by nothing other than his own *ipse dixit*). The court has nothing before it to determine whether Ms. Balogh's opinion is the result of generally accepted methodology in the field because it is unclear what her methodology is at all.

In light of that, regardless of whether she is qualified, based her opinion on sufficient facts, or any of the other *Daubert* factors, her testimony fails to meet the threshold of reliability required for admission. *See Daubert*, 509 U.S. at 596. The report relies on speculative principles that it does not sufficiently connect to the facts of the case, and the court is left to guess as to how Ms. Balogh reaches her conclusions. Therefore, plaintiff's motion in limine as to Ms. Balogh is GRANTED, and her expert testimony is deemed inadmissible.

**IV.    Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's motion in limine regarding the life care planner (ECF No. 128) be, and the same hereby is, DENIED, as moot.

James C. Mahan
U.S. District Judge

- 7 -

IT IS FURTHER ORDERED that plaintiff's motion in limine regarding apportionment opinions (ECF No. 134) be, and the same hereby is, GRANTED, as described in section III.B.

IT IS FURTHER ORDERED that plaintiff's motion in limine regarding Dr. Freeman (ECF No. 135) be, and the same hereby is, GRANTED in part, and DENIED in part, consistent with section III.C.

IT IS FURTHER ORDERED that plaintiff's motion in limine regarding Ms. Balogh (ECF No. 136) be, and the same hereby is, GRANTED.

DATED March 31, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**